# LLOYD P. NICELY et al. v. W. M. NICELY.—293 S. W. (2d) 30.

Eastern Section.   January 11, 1956.

Petition for Certiorari denied by Supreme Court June 8, 1956.

180

C. K. Ellis, Rutledge, Frank L. Flynn, Knoxville, for appellants.

D. S. Beeler, Rutledge, for appellee.

HOWARD. J.  The original bill herein was filed by the complainants, Lloyd P. Nicely, Curt Nicely, Ila Nicely Beeler, H. C. Nicely, B. F. Nicely, and Mamie Nicely Acuff, all adults, against their uncle, the defendant W. M. Nicely, to sell for petition two tracts of land situated in the Sixth Civil District of Grainger County, totaling approximately 68 acres.  These tracts were formerly owned by Pearlie Nicely, a spinster, who died intestate on March 27, 1952, leaving as her surviving heirs a brother, the defendant W. M. Nicely, and the six complainants, who are the children of another brother, S. B.

Nicely, deceased. The bill alleges that the two tracts cannot be divided in kind, and prays that they be sold and the proceeds divided according to the interests of the respective parties.

Defendant, W. M. Nicely, filed an answer and cross-bill in which he averred that the lands were so situated that they could be divided in kind, and he prayed that this be done.

Upon the hearing the Chancellor ordered a reference to the Master to take proof and report on the following items:

"1. Who are the owners of the premises sought to be sold and the respective rights, titles and interests of the parties therein, and what share or part belongs to each.

"2. Whether the premises are so situated or of such description that partition thereof cannot be equitably made or whether said premises are so situated and of such description that partition in kind is practicable and can be equitably made and manifestly for the advantage of the parties.

"3. Whether there are any encumbrances on the premises not disclosed by the pleadings, and if so what and to whom belonging?"

Much proof was heard by the Master who reported that the defendant, W. M. Nicely, inherited a one-half undivided interest in the lands, and that each of the complainants inherited a one-twelfth undivided interest therein; that, except for the 1953 State and County taxes, the property was unencumbered.

On item 2, which involves the dispute herein, the Master reported, as follows:

"It would be to the advantage of all parties owning the lands of Pearlie Nicely deceased that the same be sold and the proceeds divided among those entitled thereto; rather than partitioned in kind. That it would depreciate the lands in value to undertake partition in kind among those shown to be entitled thereto.

"The proof taken in support of partition in kind is of a negative nature and not responsive to the inquiry under the reference, or at least in the main.

"The proof in support for a sale for partition is in main responsive to the reference, and sustains sale for partition.

"In the judgment of the Master the proof taken and filed in the cause clearly preponderates in favor of a sale for partition rather than partition in kind."

The defendant filed exceptions to the above portion of the Master's report, which the Chancellor sustained on grounds that the lands, under the proof, could be equally divided, and an order was entered appointing Commissioners to go upon "and divide the lands into two equal shares or parts," the order further providing that complainants be allowed to choose which of the two parts they would take.

In their report the Commissioners divided the lands as follows: Out of a 51 acre tract, 27 acres, which included 2 dwellings, the barn and a crib, were set-off as one half, and the remaining 24 acres, which included one barn, were

added to a separate tract of 17 acres, making approximately 41 acres, as the other half.

To the Commissioners' report the complainants duly filed several exceptions, the chief complaints being (1) that the Commissioners had allowed a difference of only 14 acres to offset the two dwellings, the barn and crib; and (2) that the Court erred in ordering that the lands be divided into two equal parts, since the proof and the report of the Master showed that the lands could not be partitioned in kind. These exceptions were overruled, and the complainants elected, under protest, to take the half containing 41 acres, and a decree was accordingly entered vesting and divesting title to the lands as divided, the decree further providing that title to the 41 acres be vested in complainants "as tenants in common in fee simple," and that complainants' bill be dismissed.

From the decree the complainants have prayed a broad appeal to this Court, and errors have been assigned, the chief complaints being that the Chancellor erred in decreeing that (1) the lands be divided in two equal parts, and (2) in refusing to order a sale for partition as recommended by the Master.

██ It is the policy of the law to give each person his own in severalty and not to force him to continue in partnership with another. Hence, "Any person having an estate of inheritance, or for life, or for years, in lands, and holding or being in possession thereof, as tenant in common or otherwise, with others, is entitled to partition thereof, or sale for partition." Code 1932, Section 9165. Richardson v. Mitchell, 34 Tenn. App. 318, 237 S. W. (2d) 577; Baumgartner v. Baumgartner, 17 Tenn. App. 305,

67 S. W. (2d) 154; Ferriss v. Lewis, 2 Tenn. Ch. 291; Helm v. Franklin, 24 Tenn. 404.

The law further provides that "partition shall be made according to the respective rights of the parties, setting apart to such as desire it their shares in severalty, and leaving the shares of others, if desired, in common; and if there are minors, the court may, in its discretion, leave their shares in common, or set them apart to each in severalty, as may appear to be just, upon the proof introduced." Code 1932, Section 9168. However, under this Section, the Court has no power to allot a certain tract of land to a group "to be held by them as tenants in common *without their consent.*" Richardson v. Mitchell, supra. (Emphasis supplied.)

In Richardson v. Mitchell, supra [34 Tenn. App. 318, 237 S. W. (2d) 582], the several defendants were divided into three groups. By the decree one group of two was given one tract as tenants in common, a group of four was given a number of tracts as tenants in common, and another group of three was given a still greater number of tracts as tenants in common. This was done without the consent of the defendants, and from the decree they appealed and, among other things, assigned as error that "The court had no power to allot certain tracts of land to groups of defendants to be held by them as tenants in common without their consent." In sustaining the defendants' contention and holding the decree confirming the report of the Commissioners void, this Court, Middle Section, said:

"The original decree confirming the report of the commissioners was void because the court had no power under the statute to allot certain lands under

this partition proceeding to be held by the parties to the suit as tenants in common without their consent which was not given. * * * We hold the court was compelled to allot to each tenant in common his part of the land in severalty unless they agreed to have the land allotted to them as tenants in common.''

■■ Furthermore, we find that the weight of the proof overwhelmingly supports the Master's report that the two. tracts in question were not susceptible to partition in kind among the parties who held title thereto as tenants in common. Defendant seems to have relied wholly upon the proposition that if the lands could be divided in two equal parts, and if complainants were given their choice, that this would be a fair and reasonable settlement. However, three of defendant's witnesses testified that they did not know whether, if the lands were divided, this would make them more or less valuable. On the other hand, several of complainants' ten witnesses gave their opinion that if the lands were divided that this would reduce their sale value, and the 10 as well as 4 of defendant's witnesses testified that the lands could not be partitioned in kind. We therefore have concluded, as did the Master, that it would be advantageous to all the parties that the lands be sold and the proceeds be divided among those entitled thereto, the applicable rules being stated in Gibson's Suits in Chancery, as follows:

''2. Where a Sale is Plainly Advantageous. Where the premises are of such description that it would be manifestly for the advantage of the parties that they should be sold, instead of partitioned, the Court will so decree. The test, whether it is manifestly for the advantage of the owners that a tract of land should be sold instead of partitioned, is

whether it will bring more money when sold as a whole than the several shares would bring in the aggregate when sold separately to different purchasers, after a partition in kind. If the tenants in common would, very probably, realize more money by having the tract sold as a whole, or sold in fewer parts than there are shares, then they would very probably realize by selling their respective shares after a partition, then it would be manifestly to their advantage that the land should be sold instead of partitioned in kind. The advantage the statute refers to is a financial advantage, and the money value of the whole tract as compared with the aggregate money value of the several shares after partition in kind, is the test for advantage. One of the tenants in common may purchase the land.'' 4th Ed., Sec. 1065, p. 881.

Accordingly, the decree will be reversed and the cause will be remanded for a sale of the property. The costs accruing in this Court will be adjudged against the defendant, and the costs accruing below will be adjudged there.

Reversed and remanded.

McAmis, P. J. and Hale, J., concur.